UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STATOIL (NIGERIA) LIMITED and TEXACO OUTER SHELF NIGERIA LIMITED,

Petitioners,

– against –

NIGERIAN NATIONAL PETROLEUM CORPORATION,

Respondent.

Case No. 18-cv-02392 (RMB)

---

**PETITIONERS' MEMORANDUM OF
LAW IN OPPOSITION TO RESPONDENT'S
MOTION TO DISMISS THE AMENDED PETITION**

**FRESHFIELDS BRUCKHAUS
DERINGER US LLP**
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
*Attorneys for Petitioners*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

GLOSSARY ............................................................................................. viii

PRELIMINARY STATEMENT ........................................................... 1

ARGUMENT ......................................................................................... 3

I.    The Court Should Recognize And Enforce The Awards ...................... 4

    A.    The Set Aside Decision Is Not Entitled to Comity Because the Nigerian Courts Have Denied, and Will Continue to Deny, Petitioners Due Process .............................................................. 4

    B.    The Set Aside Decision Is Also Not Entitled to Comity Under *Pemex* .......................................................................................... 8

        1.    Enforcement of the Awards Will Vindicate Petitioners' Contractual Rights ........................................................ 9

        2.    The Set Aside Decision Applies Law Retroactively................... 10

        3.    The Set Aside Decision Denies Petitioners a Forum to Bring Their Claims .................................................... 11

        4.    The Set Aside Decision Permits a Government Taking Without Compensation ................................................ 11

II.    This Court Has Personal Jurisdiction Over NNPC ........................... 12

    A.    The Court Has Jurisdiction Over NNPC Pursuant to the FSIA ............. 12

    B.    The Court Has Jurisdiction Over NNPC Because NNPC Is Nigeria's Alter Ego ............................................................... 13

        1.    NNPC is Extensively Controlled by Nigeria .............................. 15

        2.    An Alter Ego Finding Is Necessary to Prevent Fraud and Injustice ............................................................... 19

    C.    NNPC's Contacts with the United States Support the Exercise of Jurisdiction .................................................................. 19

        1.    NNPC Repeatedly Traveled to the United States in Connection With the PSC ........................................... 20

        2.    NNPC Uses US Currency and Bank Accounts in Connection with OML 128 ......................................... 21

III.    NNPC's *Forum Non Conveniens* Defense Fails ............................... 22

    A.    Petitioners' Choice of Forum Is Entitled to Deference........................... 22

    B.    Nigeria Is Not an Adequate Forum........................................................ 24

    C.    NNPC Fails to Weigh the Public and Private Interest Factors ............... 25

CONCLUSION.......................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Ackermann v. Levine*,
    788 F.2d 830 (2d Cir. 1986)...................................................................................5

*Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*,
    39 F. Supp. 3d 516 (S.D.N.Y. 2014).............................................................16, 17, 18, 19

*Arch Trading Corp. v. Republic of Ecuador*,
    839 F.3d 193 (2d Cir. 2016)...................................................................................15

*Bank Melli Iran v. Pahlavi*,
    58 F.3d 1406 (9th Cir. 1995) .................................................................................6

*Beech Aircraft Corp. v. Rainey*,
    488 U.S. 153 (1988).............................................................................................17

*BFI Grp. Divino Corp. v. JSC Russian Aluminum*,
    298 F. App'x 87 (2d Cir. 2008) .............................................................................24

*Bridgeway Corp. v. Citibank*,
    201 F.3d 134 (2d Cir. 2000)..............................................................................6, 11

*Burchette v. Abercrombie & Fitch Stores, Inc.*,
    No. 08 Civ. 8786 (RMB)(THK), 2009 WL 856682 (S.D.N.Y. Mar. 30, 2009) ....................17

*Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*,
    528 F. Supp. 1337 (S.D.N.Y. 1982)........................................................................24

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
    316 F. Supp. 3d 635 (S.D.N.Y. 2018)......................................................................4

*CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*,
    850 F.3d 58 (2d Cir. 2017)..................................................................................1, 3

*Copia Commc'ns, LLC v. AMResorts, L.P.*,
    812 F.3d 1 (1st Cir. 2016)....................................................................................21

*Corporación Mexicana de Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración y Producción*,
    832 F.3d 92 (2d Cir. 2016)............................................................................. *passim*

*Corporación Mexicana de Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración y Producción*,
    962 F. Supp. 2d 642 (S.D.N.Y. 2013)..................................................................3, 9

**Cases**                                                                                   **Page(s)**

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
    932 F.3d 126 (3d Cir. 2019)...................................................................................15, 17

*Cyberscan Tech., Inc. v. Sema Ltd.*,
    No. 06 Civ. 526(GEL), 2006 WL 3690651 (S.D.N.Y. Dec. 13, 2006) ...................................23

*DeJoria v. Maghreb Petrol. Expl., S.A.*,
    935 F.3d 381 (5th Cir. 2019) ...............................................................................................6

*DeJoria v. Maghreb Petrol. Expl., S.A.*,
    A-13-CV-654-RP-AWA, 2018 WL 1057029 (W.D. Tex. Feb. 26, 2018) ...............................7

*DiRienzo v. Philip Servs. Corp.*,
    294 F.3d 21 (2d Cir. 2002)............................................................................................22, 24

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013)........................................................................................4, 16, 18

*Druck Corp. v. Macro Fund (U.S.) Ltd.*,
    102 F. App'x 192 (2d Cir. 2004) .......................................................................................20

*Edward B. Beharry & Co. v. Bedessee Imports Inc.*,
    09-CV-77 (DLI) (JMA), 2013 WL 12363612 (E.D.N.Y. June 24, 2013) .............................25

*EM Ltd. v. Banco Central de la Republica Arg.*,
    800 F.3d 78 (2d Cir. 2015)........................................................................................15, 19

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petrol. Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y 2019)............................................................... *passim*

*Figueiredo Ferraz E Engenharia de Projeto Ltda v. Republic of Peru*,
    665 F.3d 384 (2d Cir. 2011)................................................................................22, 23, 24

*First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*,
    462 U.S. 611 (1983)......................................................................................................14, 16, 19

*Freudensprung v. Offshore Tech. Servs. Inc.*,
    379 F.3d 327 (5th Cir. 2004) ...........................................................................................21

*Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*,
    582 F.3d 393 (2d Cir. 2009)........................................................................................12, 13

*Funnekotter v. Agric. Dev. Bank of Zim.*,
    No. 13 Civ. 1917(CM), 2015 WL 9302560 (S.D.N.Y. Dec. 17, 2015)......................14, 15, 16

**Cases**                                                                      **Page(s)**

*Ghassabian v. Hematian*, No. 08 Civ. 4400(SAS), 2008 WL 3982885
    (S.D.N.Y. Aug. 27, 2008) ...............................................................................4

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
    564 U.S. 915 (2011)...................................................................................19

*GTFM Inc. v. Int'l Basic Source, Inc.*,
    No. 01 Civ.6203(RWS), 2002 WL 42884 (S.D.N.Y. Jan. 11, 2002) .....................16

*Hilton v. Guyot*,
    159 U.S. 113 (1895)..........................................................................3, 4, 5, 7

*Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*,
    No. 15-CV-06478 (ALC), 2016 WL 7451306 (S.D.N.Y. Dec. 27, 2016)..............21

*In re Arb. between Monagesque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*,
    311 F.3d 488 (2d Cir. 2002)...........................................................................23

*Kensington Int'l Ltd. v. Republic of Congo*,
    No. 03 Civ. 4578 LAP, 2007 WL 1032269 (S.D.N.Y. Mar. 30, 2007).................17

*Landgraf v. USI Films Prods.*,
    511 U.S. 244 (1994)...................................................................................10

*Licci v. Lebanese Canadian Bank, SAL*,
    20 N.Y.3d 327 (2012)..................................................................................21

*McKesson Corp. v. Islamic Republic of Iran*,
    52 F.3d 346 (D.C. Cir. 1995).........................................................................18

*Medicrea USA, Inc. v. K2M Spine, Inc.*,
    17 Civ. 8677(AT), 2018 WL 3407702 (S.D.N.Y. Feb. 7, 2018)....................20, 21

*Miller v. Calotychos*,
    303 F. Supp. 2d 420 (S.D.N.Y. 2004).............................................................23

*Moncrief Oil Int'l Inc. v. OAO Gazprom*,
    481 F.3d 309 (5th Cir. 2007) ........................................................................21

*Norex Petrol. Ltd. v. Access Indus., Inc.*,
    416 F.3d 146 (2d Cir. 2005)......................................................................22, 25

*Off. Comm. of Unsec. Creds. of Arcapita, Bank B.S.C. v. Bahr. Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016).........................................................................21

**Cases**                                                                 **Page(s)**

*Online Payment Sols., Inc. v. Svenska Handelsbanken AB*,
    638 F. Supp. 2d 375 (S.D.N.Y. 2009) .......................................................... 23

*PHH Corp. v. CFPB*,
    839 F.3d 1 (D.C. Cir. 2016), *rev'd en banc on other grounds*, 881 F.3d 75
    (D.C. Cir. 2018) ........................................................................................... 10

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) .................................................................................... 24

*Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*,
    23 F.3d 41 (2d Cir. 1994) ......................................................................... 3, 4

*Republic of Arg. v. Weltover, Inc.*,
    504 U.S. 607 (1992) .................................................................................... 13

*S & Davis Int'l, Inc. v. The Republic of Yemen*,
    218 F.3d 1292 (11th Cir. 2000) .................................................................. 13

*Sangeorzan v. Yangming Marine Transp. Corp.*,
    951 F. Supp. 650 (S.D. Tex. 1997) ............................................................ 24

*Sanko S.S. Co., Ltd. v. Cook Indus., Inc.*,
    495 F.2d 1260 (2d Cir. 1973) ...................................................................... 4

*Shapiro v. Republic of Bol.*,
    930 F.2d 1013 (2d Cir. 1991) .................................................................... 13

*TermoRio S.A. E.S.P. v. Electranta S.P.*,
    487 F.3d 928 (D.C. Cir. 2007) ................................................................. 4, 6

*Texas Trading & Mill. Corp. v. Fed. Republic of Nigeria*,
    647 F.2d 300 (2d Cir. 1981) ...................................................................... 12

*Thai-Lao Lignite (Thai.) Co., Ltd. v. Gov't of the Lao People's Democratic
    Republic*,
    No. 1:10-cv-05256-KMW-DCF (S.D.N.Y. Mar. 12, 2013), ECF No. 226 ............................. 4

*Thai-Lao Lignite (Thai.) Co. v. Gov't of the Lao People's Democratic Republic*,
    997 F. Supp. 2d 214 (S.D.N.Y. 2014) ...................................................... 4, 9

*Topnotch Tennis Tours, LLC v. Glob. Tennis Connections Ltd.*,
    No. 13-CV-4844 (SLT) (VMS), 2014 WL 6389587 (E.D.N.Y. Nov. 14, 2014) ........ 19, 20, 21

*Traffix, Inc. v. Herold*,
    269 F. Supp. 2d 223 (S.D.N.Y. 2003) .................................................. 20, 21

**Cases**                                                       **Page(s)**

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*,
  241 F.3d 135 (2d Cir. 2001) .................................................................12

*UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*,
  No. SA-04-CA-1008-WRF, 2008 WL 2946059 (W.D. Tex. July 25, 2008) ..........................25

*Vartelas v. Holder*,
  566 U.S. 257 (2012) ........................................................................10

*Walden v. Fiore*,
  517 U.S. 277 (2014) ........................................................................21

*Wiwa v. Royal Dutch Petroleum Co.*,
  226 F.3d 88 (2d Cir. 2000) .................................................................23

*Yukos Cap. S.A.R.L. v. OAO Samaraneftegaz*,
  No. 10 CIV. 6147 (PAC), 2012 WL 3055863 (S.D.N.Y. July 24, 2012) .................4

*Zurich Am. Ins. Co. v. Team Tankers A.S.*,
  811 F.3d 584 (2d Cir. 2016) .................................................................3

**Statutes**

28 U.S.C. § 1330 ..........................................................................12

28 U.S.C. § 1605 ..........................................................................13

28 U.S.C. § 1608 ..........................................................................12

Federal Arbitration Act, 9 U.S.C. § 1 et seq. .............................................11

**Treaties**

Convention on the Recognition and Enforcement of Arbitral Awards, June 10,
  1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 .....................................................23

**Foreign Authorities**

Constitution of the Federal Republic of Nigeria (1999) .................................7, 11

Nigerian National Petroleum Corporation Act, Cap. N123 ....................................16

Petroleum Profits Tax Act .................................................................10

**Other Authorities**

8 Moore's Federal Practice – Civil § 43.05 (2019) .........................................4

**Other Authorities**                                                    **Page(s)**

Br. for *Amicus Curiae* Professor George A. Bermann in Support of Petitioners-
Appellants), No. 19-3159 (2d Cir. Jan. 17, 2020), ECF No. 110-2 .........................................8

H.R. Rep. No. 94-1487 (1976), U.S.C.C.A.N. 6604, 6611 .........................................................13

# GLOSSARY[1]

| | |
|---|---|
| AP or Petition | Amended Petition to Recognize and Enforce Foreign Arbitral Awards and Request for Pre-Judgment Security, dated January 28, 2020 (ECF No. 40) |
| *Bancec* | *First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611 (1983) |
| Hembree Decl. | Declaration of Nathan Hembree in Support of Petitioners' Opposition to Respondent's Motion to Dismiss the Amended Petition, dated March 10, 2020 |
| First Fagbohunlu Decl. | Declaration of Babatunde Fagbohunlu, SAN in Support of Petitioners' Amended Petition to Confirm Foreign Arbitral Awards and Request for Pre-Judgment Security, dated January 28, 2020 (ECF No. 41) |
| First Page Decl. | Declaration of Matthew T. Page in Support of Petitioners' Amended Petition to Confirm Foreign Arbitral Awards and Request for Pre-Judgment Security, dated January 28, 2020 (ECF No. 42) |
| FNC | *Forum non conveniens* |
| Motion or MTD | Memorandum of Law in Support of Respondent Nigerian National Petroleum Corporation's Motion to Dismiss the Amended Petition (ECF No. 51) |
| Oditah Decl. | Declaration of Fidelis Oditah QC, SAN (ECF No. 55) |
| Opposition or Opp. | Memorandum of Law in Opposition to Respondent's Motion to Dismiss the Amended Petition, dated March 10, 2020 |
| *Pemex* | *Corporación Mexicana de Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración y Producción*, 832 F.3d 91 (2d Cir. 2016) |
| *Pemex SDNY* | *Corporación Mexicana de Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración y Producción*, 962 F. Supp. 2d 642 (S.D.N.Y. 2013) |
| Second Fagbohunlu Decl. | Declaration of Babatunde Fagbohunlu, SAN in Support of Petitioners' Opposition to Respondent's Motion to Dismiss the Amended Petition, dated March 10, 2020 |

---

[1]  Capitalized terms not defined herein have the meaning assigned in the Petition.

## GLOSSARY

| | |
|---|---|
| Second Page Decl. | Declaration of Matthew T. Page in Support of Petitioners' Opposition to Respondent's Motion to Dismiss, dated March 10, 2020 |
| Set Aside Decision | The Nigerian Federal High Court decision in *Nigerian National Petroleum Corporation v. Statoil (Nigeria) Limited and Texaco Nigeria Outer Shelf Limited*, No. FHC/L/CS/638/2015 |
| Shasore Decl. | Declaration of Olasupo Shasore, SAN in Support of Petitioners' Amended Petition to Recognize and Enforce Foreign Arbitral Awards and Request for Pre-Judgment Security, dated January 28, 2020 (ECF No. 43) |
| Vandergeest Decl. | Declaration of Christian Vandergeest in Support of Petitioners' Amended Petition to Recognize and Enforce Foreign Arbitral Awards and Request for Pre-Judgment Security, dated January 28, 2020 (ECF No. 44) |

## PRELIMINARY STATEMENT

Petitioners ask this Court to enforce their arbitral Awards.[2]  Under the strong US policy in favor of arbitration, arbitral awards are presumptively enforceable.

NNPC asks this Court not to enforce the Awards and instead to give comity to the Nigerian Set Aside Decision.  Unlike arbitral awards, foreign judgments do not benefit from a strong pro-enforcement policy and instead are enforceable only if entitled to comity.  Principles of comity, and longstanding US law, prohibit recognition of a foreign judgment when doing so is repugnant to fundamental notions of justice and fairness in the United States.  That would certainly be the case here—and this Court need not take Petitioners' word for it.

Rather, the Court may rely on the statements of NNPC's own expert on Nigerian judicial independence, Fidelis Oditah QC, SAN.  *In this proceeding*, Oditah opines that the Nigerian Set Aside Decision should be granted comity, and the Awards refused recognition, because "Nigerian courts are independent as that concept is understood under English and US law and there is no evidence that Nigerian Judges are beholden to politicians."  *Outside of this proceeding*, however, Oditah has said the opposite.  When not acting as NNPC's paid expert witness, Oditah has stated:

- "In contrast with Nigerian courts that have *surrendered their judicial powers to politicians*, the UK courts have shown how a judiciary should function."

- "I do fear that some judges [in Nigeria] have *surrendered their independence to politicians*. . . .  I also believe that the *politicians have sought to erode the independence of the judiciary*. . . .  But one must blame the judges more than we blame the politicians because the judges have allowed themselves to be manipulated . . . ."

- "There is *no doubt* that the courts have felt enormous pressure in relation to *big cases*."

- "There is a whole lot that is wrong with the judiciary in terms of recruitment, in terms of the promotion, in terms of independence. . . .  Of course, one has to put this in the context

---

[2]   US courts "enforce" awards rendered outside of the United States and "confirm" domestic awards.  *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 75 (2d Cir. 2017).

of the big cases, because in the context of small cases the judiciary functions well. . . . ***It's the big cases that have challenged the judiciary and they've shown themselves to be incapable of performing their role independently in that context . . . .***"

Hembree Decl. Exs. A-D (emphasis added).

This, of course, is one of the "big cases" for the Nigerian judiciary, with international oil companies seeking over $1 billion from Nigeria's most politically-powerful State-owned entity.  As Oditah predicted, the Nigerian courts are "incapable of performing their role independently in that context."

Oditah's view is shared by the United States, the European Union, the United Nations, and civil society organizations.  It is also shared by Matthew Page, the former senior advisor on Nigeria at the State Department.  Page opines that the Nigerian courts could not rule for Petitioners in this sensitive, high-value and highly politicized dispute because, in cases like this one, the Nigerian courts are not independent of the government.  Objective data confirms that conclusion.  Over the past twenty years of reported decisions, NNPC has ***a perfect record*** in Nigerian courts when sued for money damages by foreign-owned companies, and ***no Nigerian court has confirmed an arbitral award for damages against NNPC***.

The Set Aside Decision is also not entitled to comity because its enforcement would sanction NNPC's abrogation of its agreement to arbitrate, the retroactive application of law, and a taking of private property without just compensation, in addition to leaving Petitioners without a forum in which to seek redress for NNPC's substantial contractual breaches.

The inescapable reality is that the Nigerian courts could not rule in Petitioners' favor in this dispute, that Petitioners did not receive due process in Nigeria, and that the prospect of Petitioners receiving due process in Nigeria in this case in the future is, at best, remote. Affording comity to the Nigerian judgment, and thereby ignoring the Awards, is repugnant to fundamental notions of decency and justice in the United States.  The Awards must be enforced.

Unable to establish that the Set Aside Decision deserves comity, NNPC spends most of its brief on two sideshows: personal jurisdiction and FNC.  This Court undoubtedly has jurisdiction over NNPC because, as an instrumentality and alter ego of Nigeria, NNPC is not entitled to due process protections and a minimum contacts analysis is not required.  But even if it were, NNPC's substantial in-forum, claim-related contacts defeat not only its jurisdictional defense, but also require the denial of NNPC's FNC argument.

## ARGUMENT

Absent from NNPC's brief is any discussion of what standard governs NNPC's motion.  Where a court is asked to determine whether to confirm an arbitral award annulled by a foreign court, the court must decide "[w]hich is to be given primacy, the award or the nullifying judgment."  *Corporación Mexicana de Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración y Producción*, 962 F. Supp. 2d 642, 643 (S.D.N.Y. 2013) (**Pemex SDNY**).   That is a question of comity, which is "the recognition which one nation allows within its territory to the . . . acts of another."  *Hilton v. Guyot*, 159 U.S. 113, 164 (1895).

In the United States, an arbitration award is presumptively enforceable.  *See Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 588 (2d Cir. 2016).  Where a foreign judgment vacating an arbitral award is "repugnant to fundamental notions of what is decent and just" in the United States, it is not entitled to comity.  *Corporación Mexicana de Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92, 106 (2d Cir. 2016) (**Pemex**).  Whether that standard is met is a factual question committed to this Court's exercise of discretion.  *See id.* at 107.  And while a petition to confirm an arbitral award is to be treated as a motion, *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 46 (2d Cir. 1994), this Court must nevertheless accept the Petition's allegations as true.  *See CBF*, 850 F.3d at 63 (reversing dismissal and accepting petitioners' allegations as true in an

action to enforce a foreign arbitral award); *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 635, 653 (S.D.N.Y. 2018) (same); *Thai-Lao Lignite (Thai.) Co. v. Gov't of the Lao People's Democratic Republic*, 997 F. Supp. 2d 214, 223 (S.D.N.Y. 2014) (accepting petitioner's alleged facts as true); *Ghassabian v. Hematian*, No. 08 Civ. 4400(SAS), 2008 WL 3982885, at *1 (S.D.N.Y. Aug. 27, 2008) (same).   To the extent the Court finds that there is a factual dispute between the parties or that questions of credibility predominate, the Court should hear oral testimony.   8 Moore's Federal Practice – Civil § 43.05 (2019); *Sanko S.S. Co., Ltd. v. Cook Indus., Inc.*, 495 F.2d 1260, 1262-63 (2d Cir. 1973) (reversing and remanding for evidentiary hearing on facts outside of the arbitration record).[3]

Finally, to survive NNPC's pre-discovery jurisdictional dismissal motion, Petitioners need only plead "legally sufficient allegations of jurisdiction."  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).

# I.   THE COURT SHOULD RECOGNIZE AND ENFORCE THE AWARDS

## A.  The Set Aside Decision Is Not Entitled to Comity Because the Nigerian Courts Have Denied, and Will Continue to Deny, Petitioners Due Process

For more than a century, US courts have granted comity to decisions of foreign courts if, and only if, they are rendered by courts that are "likely to secure an impartial administration of justice between the citizens of its own country and those of other countries." *Hilton*, 159 U.S. at 202.  Petitioners have demonstrated that the Nigerian courts do not meet this

---

[3]   NNPC argues that confirmation proceedings should be decided on the papers.  *See* MTD at 18 n.10.  That may be appropriate when the confirmation proceeding concerns legal issues only, s*ee Productos*, 23 F.3d at 46; *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 941 (D.C. Cir. 2007), but where, as here, enforcement turns on a factual issue—*e.g.*, whether Petitioners received due process in Nigeria—courts in this Circuit have ordered discovery. *See, e.g.*, Order at 5-6, *Thai-Lao Lignite (Thai.) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*, No. 1:10-cv-05256-KMW-DCF (S.D.N.Y. Mar. 12, 2013), ECF No. 226 (document and deposition discovery); *Yukos Cap. S.A.R.L. v. OAO Samaraneftegaz*, No. 10 CIV. 6147 (PAC), 2012 WL 3055863, at *10 (S.D.N.Y. July 24, 2012) (same).

standard here: because foreign litigants cannot "secure an impartial administration of justice," *id.*, in Nigeria in high-value, high-profile cases like this one, recognizing the Set Aside Decision would contravene US public policy.  *See* AP ¶¶ 85-98; First Page Decl. ¶¶ 22-61; *Pemex*, 832 F.3d at 107; *Ackermann v. Levine*, 788 F.2d 830, 841 (2d Cir. 1986).  NNPC's response is that "NNPC wins and loses cases like any other litigant."  MTD at 24.  But neither NNPC nor its expert has presented a ***single*** case in which the Nigerian courts enforced an arbitral award for damages against NNPC or ordered NNPC to pay damages to a foreign-owned plaintiff.  *See* Oditah Decl. ¶¶ 75-81; 91-111.[4]

The US government, the United Nations, the European Union, the Chief Justice of Nigeria and the Nigerian Bar Association have all reached the same, unassailable conclusion: Nigerian courts are not independent and cannot be relied on to fairly adjudicate politically-sensitive disputes similar to this one. *See* First Page Decl. ¶¶ 32-57 (and sources cited therein). As explained by Matthew Page, the former State Department expert on Nigeria, the Nigerian courts simply cannot rule in Petitioners' favor in this political, billion-dollar dispute against NNPC.  *See* First Page Decl. ¶ 61.  In response, NNPC relies solely on the views of Oditah, *see* MTD at 24, who (until recently) agreed with Petitioners:

> I do fear that some judges have surrendered their independence to politicians.  Some for monetary reason, some in order to further their judicial ambition.  I also believe that the politicians have sought to erode the independence of the judiciary . . . . [when] judges go cap-in-hand to Governors begging for various things, some of them even go to beg for money to go on holidays, then lobbying to help them seek promotion . . . it is all part[] of the erosion of their independence.

Hembree Decl. Ex. B (Oditah Dec. 4, 2014 Interview), at 3.  More recently, Oditah explained that it is "all but impossible for [Nigerian] Judges to be independent or impartial."  Hembree

---

[4]   Oditah claims that Nigerian case law is hard to obtain, *see* Oditah Decl. ¶ 79, but presumably NNPC has access to cases that it lost, and it has presented none. Oditah's attempt to dispute Petitioners' Nigerian case law analysis also fails.  *See* Second Fagbohunlu Decl. ¶¶ 27-35.

Decl. Ex. A (Oditah Aug. 23, 2016 Article) at 6; *id.* Ex. D (Oditah June 21, 2017 Interview), 6:20-7:10 (Nigerian courts lack independence).  In any event, Oditah does not engage with the substantial body of evidence that contradicts the views he now claims to hold; he brushes it aside as biased, unreliable, or the ill-informed product of non-lawyers.  *See* Oditah Decl. ¶¶ 59, 69, 72.  As to the latter criticism, among those questioning judicial independence in Nigeria are Nigeria's current Chief Justice and the Nigerian Bar Association.  *See* First Page Decl. ¶¶ 36, 41, 44, 47, 58.  As for the charges of bias, there is no basis to credit Oditah's unsubstantiated and shifting views over those of the international community, leading Nigerian jurists, and the United States government.  Indeed, US courts routinely credit the State Department's views on foreign judicial systems.  *See Bridgeway Corp. v. Citibank*, 201 F.3d 134, 141-42 (2d Cir. 2000) (State Department reports are "powerful . . . documentary evidence" concerning a foreign judicial system); *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1411-12 (9th Cir. 1995).

NNPC's legal arguments are equally infirm.  NNPC mischaracterizes *TermoRio* as involving "a claim materially identical to the one Petitioners make here."  MTD at 25.  But in *TermoRio*, petitioners "neither alleged nor provided any evidence to suggest that the parties' proceedings before [the Colombian court] violated any basic notions of justice."  487 F.3d at 939.  Next, NNPC seeks to limit *Bank Melli* to its facts because the defendant in that case was the Shah's relative.  MTD at 22.  This misrepresents the court's holding, which turned not on the defendant's identity, but on evidence analogous to that which Petitioners present here: State Department reports and a declaration of a State Department expert that Iranian courts were not independent or impartial in cases involving American litigants.  *Bank Melli*, 58 F.3d at 1411-12.[5]

---

5    NNPC's discussion of *DeJoria v. Maghreb Petrol. Expl., S.A.*, 935 F.3d 381 (5th Cir. 2019), *see* MTD at 22, is similarly flawed.  There, the Fifth Circuit upheld the denial of comity to a Moroccan judgment because evidence, including reports from the US government, "paint[ed]

Unable to respond to Petitioners' actual argument—that in the present circumstances, Petitioners cannot secure "impartial administration of justice," *Hilton*, 159 U.S. at 202—NNPC reframes it, asserting that Petitioners "ask[] this Court to sit in judgment over the correctness of the Nigerian court's interpretation of its own law."  MTD at 21.  But the issue is not the Nigerian court's technical failures (which even Oditah accepts), but the effective inability of Nigerian courts to rule in favor of Petitioners against NNPC in this highly public and substantial dispute.  *See* AP ¶ 66; Vandergeest Decl. Ex. B (Nigerian Cases – Foreign Plaintiffs Against NNPC); First Page Decl. ¶ 53; Hembree Decl. Ex. D (Oditah June 21, 2017 Interview), 6:20-7:10.  In any event, so deficient is the Set Aside Decision—which relied on abrogated authority to hold that Section 251 of the Nigerian Constitution deprived the Tribunal of jurisdiction over the parties' dispute, *see* First Fagbohunlu Decl. Ex. H (Set Aside Decision), at 30; Shasore Decl. ¶¶ 26-27, 58—that even NNPC's expert refuses to defend it:

> [T]he decisions of Nigerian courts setting aside the overlift awards in favour of IOCs on the basis that the entire arbitration (as opposed to certain aspects of the matters submitted to arbitration) was in respect of inarbitrable disputes and that such inarbitrability derives from section 251(1) of the Constitution of Nigeria 1999, **cannot be supported** . . . .

Oditah Decl. ¶ 43 (emphasis added).[6]

Finally, recent events associated with the *P&ID* case confirm the inability of the Nigerian courts to provide Petitioners with an impartial administration of justice.  In *P&ID*, the

---

a picture of a judicial system in which judges feel tremendous pressure to render judgments that comply with the wishes of the [government] and those closely affiliated with it." *DeJoria v. Maghreb Petrol. Expl., S.A.*, A-13-CV-654-RP-AWA, 2018 WL 1057029, at *12 (W.D. Tex. Feb. 26, 2018).  That perfectly parallels the circumstances of this case.

[6]    Instead of defending the Set Aside Decision—the decision that NNPC asks this Court to endorse—Oditah defends the *Erha* Court of Appeal Decision, rendered in a dispute to which Petitioners are not parties.  That decision is itself deeply flawed as it held that Exxon and Shell had contractual rights that NNPC breached, but simultaneously denied them any remedy.  *See* First Fagbohunlu Decl. Ex. I (Erha Court of Appeal Decision), at 15, 20.

English courts enforced a multi-billion-dollar arbitration award against Nigeria.  *See* First Page Decl. ¶ 60.  In response, the Nigerian government engaged in what distinguished Nigerian lawyers call a "campaign of intimidation" against those associated with the award, including a former Chief Justice of Nigeria who acted as a legal consultant to the petitioners:

> The treatment meted out to a retired Chief Justice who provided expert legal advice to [P&ID] in a dispute with the Ministry of Petroleum . . . has been national news in Nigeria.  It will not have gone unnoticed by Nigeria's judges. Given the broader context . . . it would . . . be unreasonable for [a US court] to rely upon [the former Chief Justice's] colleagues to uphold the rights of foreign investors in a high value dispute with NNPC.  The potential personal costs are simply too high.

Hembree Decl. Ex. E (Nigerian Lawyers Amicus Br.), at 21, 24-25; *see also* AP ¶ 97.  Oditah is no doubt aware of the *P&ID* dispute, *see* First Page Decl. ¶ 60, but chose not to address it.

It would be repugnant to fundamental notions of decency and justice in the United States to recognize the Set Aside Decision over the Awards in circumstances where the domestic and international consensus, and the views of NNPC's hired expert, is that the Nigerian courts lack the independence to adjudicate cases such as this one fairly.  *See Pemex*, 832 F.3d at 107.

### B.   The Set Aside Decision Is Also Not Entitled to Comity Under *Pemex*

The Second Circuit's ruling in *Pemex* separately requires the Awards' recognition.  NNPC stresses that "the facts here differ" from *Pemex*, MTD at 17, which merely betrays NNPC's misunderstanding of that decision: *Pemex* is not limited to its facts, but instead reflects broad principles under which courts will afford comity to an arbitration award over a foreign judgment setting aside that award.[7]  Each of the principles that justified enforcement in *Pemex*—which are individually "repugnant to fundamental notions of what is decent and just" in

---

[7]   The *Esso* court also erred (*inter alia*) by limiting *Pemex* to its facts.  *See* Br. for *Amicus Curiae* Professor George A. Bermann in Support of Petitioners-Appellants at 7, No. 19-3159 (2d Cir. Jan. 17, 2020), ECF No. 110-2 (criticizing the *Esso* decision for, *inter alia*, "limiting its assessment to the case-specific considerations that were relevant in *Pemex*").

the United States, *Pemex*, 832 F.3d at 107, and therefore individually sufficient to recognize and enforce the Awards over the Set Aside Decision—is present here.

### 1.   Enforcement of the Awards Will Vindicate Petitioners' Contractual Rights

Where a State-owned entity consents "to arbitration and to the enforcement of arbitral awards," it cannot later escape that obligation by arguing to its home courts that the matter it agreed to arbitrate is not, in fact, arbitrable. *Pemex*, 832 F.3d at 107.  On at least two occasions—including after the parties' dispute crystalized—NNPC committed to arbitrating oil allocation disputes. *See* AP ¶ 101; First Fagbohunlu Decl. Ex. D (PSC), Clause 21; Vandergeest Decl. Ex. AAA (Meeting Minutes), at 3 ("whatever is ruled in [another] arbitration will be binding on NNPC" in this dispute).  But when the Tribunal ruled in Petitioners' favor, NNPC sought to escape that obligation by appealing to its home courts for assistance. The Nigerian courts obliged, as they have always done in these circumstances, permitting NNPC to gut its agreement to arbitrate and "shatter[ing] [Petitioners'] investment-backed expectation in contracting." *Pemex*, 832 F.3d at 108; *see also* AP ¶¶ 100-04; *Pemex SDNY*, 962 F. Supp. 2d at 657-58 (Mexican court decision vacating arbitral award "violated 'basic notions of justice'" when "[t]wice [Pemex] had signed an agreement stating that disputes . . . would be arbitrated"). The Set Aside Decision thus undermines "public confidence in the administration of law" and the "security for individual rights . . . of private property" and is repugnant to US notions of decency and justice. *Pemex*, 832 F.3d at 106; *see also Thai-Lao*, 997 F. Supp. 2d at 227 (local courts "eager to graciously aid" government and its alter egos).

NNPC argues that this case "differs from *Pemex*" because "[unlike Pemex], NNPC asserted its jurisdictional objection" at "the outset of the arbitration."  MTD at 20.  That is incorrect.  Pemex also disputed the tribunal's jurisdiction from the very start of its arbitration proceeding. *See Pemex SDNY*, 962 F. Supp. 2d at 646-47.  It is also an inconsequential

9

distinction.  NNPC does not explain why a later jurisdictional objection is more violative of basic notions of US justice than an earlier one.  And if all that is required for a State's alter ego to prevail on this factor is to assert early that a dispute is inarbitrable, the factor will lose all weight. Every party seeking to escape arbitration will make that argument, regardless of its merit.

NNPC next argues that the Petroleum Profits Tax Act predated the PSC.  MTD at 20.  That is irrelevant.  This dispute is about the parties' contractual rights under the PSC, not Nigeria's tax laws.  Even Nigeria's Court of Appeal recognized that disputes of this type are contractual, not tax, in nature.  *See* First Fagbohunlu Decl. Ex. I (Erha Court of Appeal Decision), at 20.  Having agreed to arbitrate disputes arising from the PSC, NNPC cannot be permitted to renege on that promise without violating US notions of justice.

### 2.   The Set Aside Decision Applies Law Retroactively

Enforcing the Set Aside Decision would also give effect to a retroactive application of law—a result that violates US public policy.  *See Pemex*, 832 F.3d at 108-09; AP ¶¶ 105-07; *see also Vartelas v. Holder*, 566 U.S. 257, 266 (2012).

NNPC argues that the retroactive application of law here is not the same retroactive application as was at issue in *Pemex*.  *See* MTD at 20-21.  But the holding in *Pemex* is not limited to the facts of that case; it reflects the type of circumstances that violate US policy. Retroactive application of law, whether done by legislation or a revisionist and unprecedented interpretation of law contravenes "bedrock due process principle[s]" and is offensive to notions of justice and fairness in the United States.  *PHH Corp. v. CFPB*, 839 F.3d 1, 46 (D.C. Cir. 2016), *rev'd en banc on other grounds*, 881 F.3d 75 (D.C. Cir. 2018); *see Landgraf v. USI Films Prods.*, 511 U.S. 244, 278 (1994).  It was not until after Petitioners invested billions of dollars and were poised to benefit from that investment that NNPC claimed that oil allocation disputes were inarbitrable.  *See* AP ¶¶ 43, 45, 51.  Even NNPC's expert cannot defend the Nigerian

court's endorsement of this change of heart, which relied on an abrogated lower court decision and an unprecedented interpretation of Nigeria's Constitution. *Compare* First Fagbohunlu Decl. Ex. H (Set Aside Decision) at 30 (relying on Section 251 of Nigeria's Constitution to hold that the dispute is inarbitrable), *with* Oditah Decl. ¶¶ 42-43 (decisions setting aside entire awards based on Section 251 "cannot be supported"). This Court should not endorse this retroactive application of the law, and the Awards should be enforced. *See Pemex*, 832 F.3d at 108-09.

### 3.   The Set Aside Decision Denies Petitioners a Forum to Bring Their Claims

The third *Pemex* factor—the importance of ensuring that every legal claim has a forum—also compels enforcement. *See Pemex*, 832 F.3d at 109-10; AP ¶ 108. The Nigerian courts do not provide Petitioners with an effective forum in this case. Over a period of two decades, the Nigerian courts have never enforced an arbitral award against NNPC or ordered NNPC to pay damages to a foreign-owned counterparty. *See supra* at 4-5. NNPC's expert also recognizes that the courts cannot deliver justice in this type of case. *See supra* at 5-6. NNPC's response is that Petitioners have ongoing litigation in Nigeria and may still prevail at the appellate level. *See* MTD at 21. But litigating "where jurisdiction and venue readily exist do[es] not constitute [an] assertion[] that the relevant courts are fair and impartial." *Bridgeway*, 201 F.3d at 141. And awaiting a Supreme Court decision on the set aside action before bringing this action—a process that NNPC's counsel admits can take "ten, 12, 15 years," Vandergeest Decl. Ex. XX (Erha Hr'g Tr.), at 7:17-20—would result in the FAA's statute of limitations barring Petitioners' claims in the United States. Simply put, if the Awards are not enforced here, there will be no forum—arbitral or judicial—in which Petitioners may recover damages for NNPC's adjudged and ongoing breaches of the PSC. *See Pemex*, 832 F.3d at 109-10.

### 4.   The Set Aside Decision Permits a Government Taking Without Compensation

Finally, the Awards should be enforced because NNPC's overlifting constitutes a

government taking of private property without compensation.  A court in this District recently found that NNPC's materially identical overlifting from another oilfield raised "the same concerns as [*Pemex*]—namely, overlifting 'amounted to a taking of private property without compensation.'" *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petrol. Corp.*, 397 F. Supp. 3d 323, 354 (S.D.N.Y 2019) (quoting *Pemex*, 832 F.3d at 110).  So too here: NNPC took nearly $1 billion of Petitioners' oil on the Nigerian government's behalf and for the government's benefit without compensation.  NNPC offers no response, except that Pemex took an interest in "94% completed work on oil rigs," MTD at 22, taking approximately $300 million in value, *see Pemex*, 832 F.3d at 97.  NNPC provides no reason why taking 100% of nearly $1 billion in disputed oil for the benefit of the Nigerian government is any different—and, indeed, the *Esso* court found that it was not.  *See Esso*, 397 F. Supp. 3d at 354.

## II.  THIS COURT HAS PERSONAL JURISDICTION OVER NNPC

### A.  The Court Has Jurisdiction Over NNPC Pursuant to the FSIA

NNPC does not dispute that Section 1330(b) of Title 28 gives this Court personal jurisdiction over NNPC because (i) the Court has subject matter jurisdiction under the FSIA and (ii) service has been effected.  This Court can end the jurisdictional inquiry here.  *See* AP ¶¶ 14-15; 28 U.S.C. §§ 1330(b), 1608(b); *Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*, 582 F.3d 393, 400 (2d Cir. 2009).  NNPC argues that under *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135 (2d Cir. 2001), a foreign State's instrumentality is entitled to due process protections outside the FSIA.  *See* MTD at 12-13.  But *U.S. Titan* relies on *Texas Trading & Mill. Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300 (2d Cir. 1981), which *Frontera* overruled with respect to the due process protections available to foreign States.  *Frontera*, 582 F.3d at 399-400 ("[where] *Texas Trading* conflicts with our holding" "it is overruled").  *Frontera* left open whether an instrumentality of a foreign State, such as NNPC, is entitled to due process

protections.  *See* 582 F.3d at 400-01 (an instrumentality "may indeed lack due process rights"). Since then, no court in this Circuit has decided this issue, and NNPC makes no attempt to explain why *Frontera*'s reasoning should not apply here, particularly as the FSIA was intended to "provide[] a comprehensive jurisdictional scheme."  H.R. Rep. No. 94-1487 at 12-13, (1976) U.S.C.C.A.N. 6604, 6611 (FSIA "prescribe[s] the necessary contacts" for personal jurisdiction).

       In any event, NNPC's argument is academic because Petitioners satisfy the commercial activity exception to sovereign immunity, which is sufficient to establish minimum contacts.  *See* AP ¶ 16; *Shapiro v. Republic of Bol.*, 930 F.2d 1013, 1020 (2d Cir. 1991).  NNPC argues that Petitioners do not allege a direct effect in the United States and thus do not satisfy the FSIA exception.  MTD at 13.  That is incorrect.  *See* AP ¶¶ 13, 16, 28 n.10 (alleging that the fruits of NNPC's breach, oil overlifted from OML 128 and its proceeds, were transferred to, and had a direct effect in, the United States).  NNPC's attempt to distinguish Petitioners' authority also fails: commercial activity that has a direct effect in the United States is sufficient to establish jurisdiction.  *See* AP ¶¶ 13, 16; *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 619 (1992) (minimum contacts test met where direct effect test met); *S & Davis Int'l, Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1304 (11th Cir. 2000) ("The 'direct effects' language of § 1605(a)(2) closely resembles the 'minimum contacts' language of constitutional due process.").

**B.   The Court Has Jurisdiction Over NNPC Because NNPC Is Nigeria's Alter Ego**

       This Court also can exercise personal jurisdiction because NNPC is an alter ego of Nigeria, and as such is not entitled to due process protections.  *See Frontera*, 582 F.3d at 400 ("foreign states are not 'persons' entitled to rights under the Due Process Clause").  Recently, a court in this District concluded, upon review of an extensive factual record obtained through discovery, that "NNPC is an alter ego of Nigeria.  Accordingly, no due process analysis is required, and this Court can exercise personal jurisdiction over NNPC."  *Esso*, 397 F. Supp. 3d at

340.   Here, Petitioners have alleged, without the benefit of discovery, the very same facts on

which the *Esso* court relied.  AP ¶¶ 19-27.  NNPC makes no effort to distinguish the *Esso* court's

findings and provides no reason why this Court should reach a different conclusion.

Where an instrumentality of a foreign state is so extensively controlled by the

sovereign that a principal/agent relationship exists *or* where recognizing the instrumentality as

separate from the State would work fraud or injustice, the instrumentality is deemed to be an

alter ego of the sovereign and indistinguishable, jurisdictionally, from the State itself.  *See First*

*Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 629 (1983)

(**Bancec**).[8]  So intertwined is the relationship between Nigeria and NNPC that the US

government does not know where Nigeria "ends and NNPC starts."  *See* Vandergeest Decl. Ex.

NN (House Speaker Accuses State Oil Company of Withholding Revenues), at 2.

Unable to rebut the sum of Petitioners' allegations, NNPC attempts to

disassemble the factual whole, asserting that Petitioners' allegations, "standing alone," MTD at

10, do not individually establish an alter ego relationship.  NNPC misapprehends the law:

Petitioners' alter ego allegations must be assessed based on the totality of the circumstances, and

here that assessment compels an alter ego finding.  *See* AP ¶¶ 17-27; *Esso*, 397 F. Supp. 3d at

340 (finding NNPC to be Nigeria's alter ego after "weighing the totality of the circumstances").[9]

---

[8]   An alter ego relationship exists where the sovereign: (i) causes the instrumentality to act on
the sovereign's behalf; (ii) ignores the instrumentality's corporate formalities; (iii) uses the
instrumentality's property as its own; (iv) deprives the instrumentality of independence from
political control; or (v) requires the instrumentality to obtain approvals for ordinary business
decisions.  *See Funnekotter v. Agric. Dev. Bank of Zim.*, No. 13 Civ. 1917(CM), 2015 WL
9302560, at *5 (S.D.N.Y. Dec. 17, 2015).  Establishing each factor is not required, although
Petitioners do so.

[9]   NNPC argues that if it is found to be an alter ego, then "virtually any government owned-
instrumentality" will be deemed an alter ego.  MTD at 9.  NNPC is mistaken.  NNPC is
among the few State-owned corporations that provide interest-free loans to their sovereign,
allow the sovereign to use their assets for free, and are so controlled by their sovereign that

1.  **NNPC is Extensively Controlled by Nigeria**

    a.  **Nigeria Makes Day-to-Day Business Decisions for NNPC**

In response to Petitioners' allegations that NNPC is not independent of Nigeria, *see* AP ¶¶ 20-22; *Esso*, 397 F. Supp. 3d at 338 ("Nigeria has a substantial role in the day-to-day operations of NNPC"), NNPC argues that the power to appoint directors and officers is insufficient to show an alter ego relationship, *see* MTD at 9-10.  Courts in this Circuit have found a sovereign's authority to change directors to support an alter ego relationship when, as here, it is combined with the State's full ownership of the instrumentality and its interference with the instrumentality's "business affairs."  *EM Ltd. v. Banco Central de la Republica Arg.*, 800 F.3d 78, 93 (2d Cir. 2015); *Esso*, 397 F. Supp. 3d at 337; *Funnekotter*, 2015 WL 9302560, at *5 (alter ego where State owned majority of defendant's stock and appointed the board); *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 932 F.3d 126, 148 (3d Cir. 2019) (same).

Not only is NNPC wholly-owned by Nigeria, but Nigeria's President appoints and can (and does) remove for any reason, at any time, NNPC's entire Board of Directors, CEO, and all senior executives.  *See Esso*, 397 F. Supp. 3d at 336-37; AP ¶¶ 20-21; Vandergeest Decl. Ex. F (Emelife Dep. Tr.), 40:5-15 (the President can fire CEO and other key employees at any time).  Nigeria's President must also approve NNPC's budget, *see Esso*, 397 F. Supp. 3d at 337-38; AP ¶¶ 21-22, and Nigeria "interjects itself into NNPC's 'ordinary business affairs,'" *Esso*, 397 F. Supp. 3d at 337, including by allowing the President to "make decisions for NNPC without board approval or that benefit Nigeria rather than NNPC," *Esso*, 397 F. Supp. 3d at 337; *see* AP ¶¶ 20-22; Vandergeest Decl. Ex. F (Emelife Dep. Tr.), 58:13-19 (once the President approves a

---

where the President orders the instrumentality to do something, board approval is not even required.  *Compare Esso*, 397 F. Supp. 3d at 333-40, *with Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 204 (2d Cir. 2016) (no alter ego where no allegations that State used "[instrumentality's] resources as its own or disregarded corporate formalities").

course of action, NNPC's Board no longer has a say and need not be consulted).  This includes ordering NNPC to pay government expenses, which NNPC treats as an interest-free loan.  *See Esso*, 397 F. Supp. 3d at 337; *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 525 (S.D.N.Y. 2014) (interest-free loans suggest alter ego relationship).[10]

The delegation policy on which NNPC relies, *see* MTD at 9, proves the point. Not only can it be revoked, but NNPC, which has annual revenue of over $7 billion, AP ¶ 21, has not identified any material business activity it can conduct without exceeding the policy's $20 million limit.  As the *Esso* court recognized, this means that the President "must approve a substantial portion of NNPC's contracts."  *Esso*, 397 F. Supp. 3d at 338; *see* AP ¶ 21 n.8.

**b.   Nigeria Uses NNPC's Property as Its Own**

An alter ego finding is also warranted because Nigeria regularly helps itself to NNPC's assets.  *See* AP ¶ 23; *Esso*, 397 F. Supp. 3d at 338 (finding "ample evidence that Nigeria uses NNPC's 'property as its own'"); *Funnekotter*, 2015 WL 9302560, at *6.  This goes to the heart of the policy animating *Bancec*: the desire to protect a state-owned corporation's creditors' expectation that they can rely on the corporation's assets to satisfy its own debts, and that those assets will not be diverted by the sovereign.  462 U.S. at 626.

NNPC responds by contesting the factual basis of Petitioners' allegations.  *See* MTD at 11-12.  But NNPC cannot rely on evidence outside of the Petition without Petitioners having an opportunity to test the veracity of NNPC's assertions.  *See Dorchester*, 722 F.3d at 86 (without "an evidentiary hearing, it [is] error for the district court to resolve factual dispute[s]"); *GTFM Inc. v. Int'l Basic Source, Inc.*, No. 01 Civ.6203(RWS), 2002 WL 42884, at *2 (S.D.N.Y. Jan. 11, 2002) (ordering jurisdictional discovery where necessary facts are "within the

---

[10]   As evidence of its independence, NNPC points to the NNPC Act that it asserts give "NNPC day-to-day control of its operations."  MTD at 10 n.2.  But it is the ***actual control*** exercised by Nigeria that is relevant to the alter ego analysis.  *Esso*, 397 F. Supp. 3d at 335.

defendant's knowledge").[11]

In any event, NNPC's assertions that it does not share New York bank accounts with Nigeria contradict *Esso*'s factual findings.  The *Esso* court found, after examining an extensive factual record, that NNPC directs transfers to and from New York bank accounts, receives account statements for those accounts, appears in the accounts' name, and uses the accounts to buy day-to-day items for its staff.  *See Esso*, 397 F. Supp. 3d at 338-39.  These facts, taken together with NNPC's use of the accounts to fund the Nigerian National Intelligence Agency and Navy, *see* AP ¶ 23, demonstrate the "commingling of . . . assets" that is a "classic earmark[] of an alter-ego relationship." *Kensington Int'l Ltd. v. Republic of Congo*, No. 03 Civ. 4578 LAP, 2007 WL 1032269, at *12 (S.D.N.Y. Mar. 30, 2007); *Crystallex*, 932 F.3d at 146 (State-owned entity's payment for unrelated sovereign programs established alter ego status).

NNPC disputes the relevance of its sharing of office space with Nigeria, *see* MTD at 11, but NNPC misses the point.  The issue is not that NNPC and Nigeria share office space, but that Nigeria uses this office space without a lease and without paying rent—which NNPC does not deny.  *See* AP ¶ 23; *Esso*, 397 F. Supp. 3d at 338; *Crystallex*, 932 F.3d at 148 (alter ego finding where oil company and petroleum ministry "share physical office space"); *Am. Federated*, 39 F. Supp. 3d at 525 (lack of written agreements suggests alter ego relationship).  NNPC also defends its "donation" of helicopters to Nigeria's Air Force as a way to eliminate "maintenance costs," MTD at 11, but fails to explain why it did not obtain any consideration for

---

[11]   Petitioners make a "sufficient start" in showing jurisdiction and so jurisdictional discovery is warranted. *Burchette v. Abercrombie & Fitch Stores, Inc.*, No. 08 Civ. 8786 (RMB)(THK), 2009 WL 856682, at *5 (S.D.N.Y. Mar. 30, 2009).  NNPC asserts that evidence to support its factual assertions is under seal in the *Esso* case. *See* MTD at 11 n.3.  Those documents belong to NNPC and NNPC could have submitted them.  Further, NNPC cannot cherry pick the parts of the *Esso* record it likes, while omitting the evidence relied on by the *Esso* court in reaching its alter ego finding. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170-72 (1988).

assets worth nearly $40 million.  *See Am. Federated*, 39 F. Supp. 3d at 525 (failure to obtain consideration for intercompany transfer of value is a quintessential sign of an alter ego relationship).

### c.   NNPC Acts on Behalf of Nigeria to Implement Governmental Policies

An alter ego relationship also exists when a sovereign's conduct and policy statements cause an instrumentality to take steps on the sovereign's behalf to implement State policy.  *See McKesson Corp. v. Islamic Republic of Iran*, 52 F.3d 346, 352 (D.C. Cir. 1995).  As the Petition demonstrates, that is exactly what happened here.  *See* AP ¶¶ 24-25.

NNPC attacks the sufficiency of Petitioners' evidence, *see* MTD at 10, ignoring that, at this stage, Petitioners need only allege facts that, if proven after discovery, would establish jurisdiction.  *Dorchester*, 722 F.3d at 84-85.  Even so, NNPC is incorrect.  As the *Esso* court found, Nigeria's President convened a governmental committee and, based on the committee's findings, ordered NNPC to overlift oil "for the direct benefit of the Nigerian government—not NNPC."  *Esso*, 397 F. Supp. 3d at 335-36.  Once ordered to commence the overlift, NNPC proceeded to do so from similarly-situated oil fields, believing that it was implementing State policy.  *See* First Page Decl. ¶ 28; AP ¶¶ 42-43.  NNPC does not deny this.

Second, NNPC misstates the holding of *McKesson*.  MTD at 10-11.  *McKesson*'s core holding is that a dairy was Iran's agent when Iran's "pattern of conduct and [public] policy statements caused [the dairy] to believe that [Iran] desired [it] to so act."  52 F.3d at 352.  Moreover, those acts were "not commercial."  52 F.3d at 352.  The facts in this case are even more compelling, because NNPC knew (and did not merely believe) that it was carrying out State policy and did so in a noncommercial manner: it bore the cost of its conduct but reaped no

benefits because the improperly lifted oil flowed only to Nigeria.[12]  *See* AP ¶¶ 24-25, 42-43.

In short, Nigeria's total control over NNPC's day-to-day business affairs; its use of NNPC's assets; and its use of NNPC to implement government policy all require an alter ego finding.  *See Esso*, 397 F. Supp. 3d at 340; *Am. Federated*, 39 F. Supp. 3d at 525-27.

### 2.   An Alter Ego Finding Is Necessary to Prevent Fraud and Injustice

NNPC should also be deemed NNPC's alter ego in order to prevent injustice.  *See Bancec*, 462 U.S. at 629.  NNPC has repeatedly claimed that it is Nigeria's agent when doing so is advantageous, including when entering into PSCs, lifting and selling oil, and defending its extra-contractual overlifting.  *See* AP ¶ 26.  NNPC cannot have it both ways:  having sought to avoid liability for overlifting by claiming that it was Nigeria's agent, NNPC cannot now claim to be independent in order to avoid this Court's jurisdiction.  *See Pemex*, 832 F.3d at 104 ("[T]reating [Pemex] as separate from the Mexican government for the purpose of personal jurisdiction would work an 'injustice' insofar as it would allow [Pemex] to characterize its status . . . in whatever way is advantageous to [it].").

### C.  NNPC's Contacts with the United States Support the Exercise of Jurisdiction

Alternatively, NNPC's suit-related contacts with the United States are more than sufficient to establish jurisdiction, as Petitioners have alleged a connection "between the forum and the underlying controversy." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011).  A "single" in-forum act is sufficient to establish specific jurisdiction.  *Id.* at 923; *Topnotch Tennis Tours, LLC v. Glob. Tennis Connections Ltd.*, No. 13-CV-4844 (SLT) (VMS), 2014 WL 6389587, at *5 (E.D.N.Y. Nov. 14, 2014) (single one-hour in-forum meeting

---

[12]   NNPC's reliance on *EM* is misplaced.  In *EM*, unlike here, Argentina did not direct its state-owned entity to implement state policies.  *See EM*, 800 F.3d at 94 ("The alleged 'coordination' of monetary-policy . . . between Argentina and [its Central Bank] is simply not sufficient to establish 'extensive control.'").

established minimum contacts).  Petitioners have shown far more than that here.

### 1. NNPC Repeatedly Traveled to the United States in Connection With the PSC

Where, as here, the underlying dispute is contractual, contract-related in-forum contacts suffice to establish jurisdiction. *See Medicrea USA, Inc. v. K2M Spine, Inc.*, 17 Civ. 8677(AT), 2018 WL 3407702, at *5, *7 (S.D.N.Y. Feb. 7, 2018) (sufficient minimum contacts where defendant made a "handful of trips" to forum, including for "general training"); *Traffix, Inc. v. Herold*, 269 F. Supp. 2d 223, 226-27 (S.D.N.Y. 2003) (minimum contacts where parties had three meetings and "several" phone calls in forum); *Topnotch*, 2014 WL 6389587, at *5.

NNPC's suggestion that its substantial in-forum, claim-related contacts are "random, fortuitous, or attenuated," MTD at 14, is frivolous.  NNPC routinely travels to the United States to solicit business because, as it admits, "Houston is key."[13]  *See* Vandergeest Decl. Ex. G (Emelife Dep. Tr.), 126:9; Vandergeest Decl. Ex. DD (NNPC visits to the United States).  As shown in Exhibits A and B, NNPC's representatives repeatedly traveled to the United States to conduct business in connection with OML 128, including to: (i) market the oil field that became OML 128 to American investors at a Houston roadshow, *see* Vandergeest Decl. Ex. EE (1990-1991 Oil & Gas Journal Excerpts); (ii) determine where oil wells should be drilled, *see* AP ¶ 28; Vandergeest Decl. Ex. FF (Kyari LinkedIn), at 3; (iii) develop a marketing program for OML 128, including a plan to target US customers, Hembree Decl. Ex. F (Close-out Meeting Minutes), at 1; (iv) negotiate issues underlying the parties' dispute, *id.* at 2; and (v)

---

[13]  Ms. Emelife's testimony that "NNPC does not . . . conduct[] business or revenue-creating activities in the United States," *see* Emelife Decl. at ¶ 22, directly contradicts her sworn testimony in *Esso*, *see* Vandergeest Decl. Ex. G (Emelife Dep. Tr.), 120:4-9 (Q: "NNPC comes to Houston to solicit investors, correct?" . . . A: "Yes.").  In truth, NNPC routinely conducts business in the United States, including by seeking investors and joint venture partners—a quintessential "business or revenue-creating activit[y]." *See, e.g.*, AP ¶ 28; Vandergeest Decl. Ex. DD (World Gas Confab Announcement), at 11 (NNPC's CEO visited US to "market" Nigeria's gas potential); *Druck Corp. v. Macro Fund (U.S.) Ltd.*, 102 F. App'x 192, 194 (2d Cir. 2004) (soliciting investment constitutes transaction of business).

receive PSC-mandated training, *see* First Fagbohunlu Decl. Ex. D (PSC), Clause 12; Hembree Decl. Exs. F-U (NNPC Visits to the US). NNPC also directed oil improperly lifted from OML 128 to the United States. *See* AP ¶ 28 n.10. For years, NNPC has purposefully availed itself of the privilege of doing business in the United States in connection with OML 128; it is thus well within this Court's jurisdiction.[14] *See Topnotch*, 2014 WL 6389587, at *6; *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, No. 15-CV-06478 (ALC), 2016 WL 7451306, at *4 (S.D.N.Y. Dec. 27, 2016); *Medicrea*, 2018 WL 3407702, at *5-6; *Traffix*, 269 F. Supp. 2d at 226-27.[15]

### 2. NNPC Uses US Currency and Bank Accounts in Connection with OML 128

The exercise of personal jurisdiction over NNPC is also proper because NNPC annually directs billions of dollars in transactions—including from the sale of oil that NNPC has improperly lifted from OML 128—to US accounts. *See* AP ¶ 28. This too is sufficient to establish requisite minimum contacts. *See Off. Comm. of Unsec. Creds. of Arcapita, Bank B.S.C. v. Bahr. Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016) (directing transfers to New York accounts sufficient to exercise jurisdiction); *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 339-40 (2012) (use of US account is "purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and [US] law").

NNPC argues that these accounts do not support jurisdiction because the bank

---

[14] NNPC relies on *Walden v. Fiore*, but in *Walden*, unlike here, the defendants had no contact at all with the forum where the claim was brought. 571 U.S. 277, 288-89 (2014). NNPC argues that because the PSC did not specifically envision continuing and wide-reaching contacts in the United States, subsequent contacts with the US do not support jurisdiction. This is incorrect. *See, e.g.*, *Medicrea*, 2018 WL 3407702, at *5 (a few trips to the forum enough to exercise jurisdiction when contract was negotiated and performed elsewhere).

[15] NNPC's reliance on three out-of-circuit cases is misplaced. *See* MTD at 14-15. Both *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007), and *Freudensprung v. Offshore Tech. Servs. Inc.*, 379 F.3d 327 (5th Cir. 2004), are inapposite because they involved actions to avoid compliance with an arbitration clause. *Moncrief*, 481 F.3d at 311; *Freudensprung*, 379 F.3d at 332-33. Further, in these cases and in *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1 (1st Cir. 2016), defendants' in-forum contacts were minuscule compared to those alleged here. As the *Esso* court correctly held, the law in this Circuit renders NNPC subject to the Court's jurisdiction. *See Esso*, 397 F. Supp. 3d at 343.

accounts "have no connection to [this] dispute" and "do not belong to NNPC."  MTD at 15. Both assertions are incorrect.  NNPC admits that it (i) directs funds to and from the JPMorgan Accounts, which (ii) "receive the proceeds from the oil and gas that NNPC sells," including (by necessity) oil improperly lifted by NNPC from OML 128, and (iii) that funds from these accounts are used to fund NAPIMS, a unit of NNPC.  *See* MTD at 15 n.6.  And NNPC does not deny that it is the ***only*** entity that can direct transfers from these accounts, that its name appears in the name of the accounts, that it receives account statements for these accounts, and that it directs payments from the accounts to purchase business items for its staff.  *See Esso*, 397 F. Supp. 3d at 338-39, 346.  Finally, even if NNPC does not "own" these accounts (and it does), NNPC is nevertheless subject to this Court's jurisdiction because "the point is not whether NNPC owns the accounts, it is that they made purposeful use of them for reasons related to the underlying dispute." *Esso*, 397 F. Supp. 3d at 344-46.  NNPC indisputably did so here.

*       *       *

In sum, Petitioners easily meet their pre-discovery jurisdictional burden for three independent reasons: (i) the FSIA gives this Court personal jurisdiction over NNPC; (ii) NNPC is an alter ego of Nigeria; and (iii) NNPC has minimum contacts with the United States.

## III. NNPC'S *FORUM NON CONVENIENS* DEFENSE FAILS

NNPC's FNC defense fails because it does not (i) overcome the required deference to Petitioners' choice of forum; (ii) demonstrate the existence of an adequate alternative forum; or (iii) address the public and private interest factors.

### A. Petitioners' Choice of Forum Is Entitled to Deference

In evaluating an FNC defense, "plaintiff's choice of forum should rarely be disturbed." *Norex Petrol. Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005); *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30-31 (2d Cir. 2002) (same).  Relying on *Figueiredo Ferraz*

*E Engenharia de Projeto Ltda v. Republic of Peru*, 665 F.3d 384 (2d Cir. 2011), and *In re Arb.*

*between Monagesque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*, 311 F.3d 488 (2d Cir.

2002), NNPC argues that Petitioners' forum is not due deference "because they are foreign

parties and this dispute has no connection to the United States."  MTD at 5.  NNPC is mistaken.

As a threshold issue, *Figueiredo* was wrongly decided because the New York

Convention (which applies here) does not permit an FNC defense.  In any event, *Figueiredo* is

inapposite.  Unlike petitioners in *Figueiredo* and *Monagesque*, which were foreign corporations

without a disclosed US parent or affiliate, *see Figueiredo*, 665 F.3d at 387 (Brazilian

corporation); *Monagesque*, 311 F.3d at 491 (Monaco corporation with Australian parent), TNOS

is an affiliate of US-based Chevron Corporation and so its choice of forum is entitled to

heightened deference.  *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000)

("any plaintiff's selection of a forum is entitled to deference, [and] that deference increases as the

plaintiff's ties to the forum increase"); *cf. Online Payment Sols., Inc. v. Svenska Handelsbanken

AB*, 638 F. Supp. 2d 375, 381-83 (S.D.N.Y. 2009) (real party in interest relevant to FNC

analysis).  NNPC's repeated visits to the US, and substantial in-forum conduct related to the

parties' contract, *see supra* at 20-21, also distinguish this case from *Figueiredo* and *Monagesque*

and are fatal to NNPC's argument.  *See Cyberscan Tech., Inc. v. Sema Ltd.*, No. 06 Civ.

526(GEL), 2006 WL 3690651, at *11 (S.D.N.Y. Dec. 13, 2006) (not inconvenient to litigate in

forum regularly visited); *Miller v. Calotychos*, 303 F. Supp. 2d 420, 429 (S.D.N.Y. 2004) ("no

appreciable inconvenience" to appearing for trial "no longer than any of the various visits"

defendants made "to promote their business interests here").

NNPC places great weight on the interest of Nigeria (its alter ego) "in applying its

own laws concerning the assessment of taxes and resolution of tax disputes." *See* MTD at 6.  But

that takes the argument nowhere: as Petitioners have shown, and Nigeria's Court of Appeal and NNPC's expert witness accept, the parties' dispute is contractual.  *See* First Fagbohunlu Decl. Ex. I (Erha Court of Appeal Decision), at 20 ("[T]he claims . . . as to the Petroleum Profit Tax returns preparation and calculation of lifting allocations can be severed from the tax dispute."); Oditah Decl. ¶¶ 38-39 ("the Court of Appeal held [in Erha] that the disputes between the parties were essentially contractual and not tax").  In any event, a material part of the parties' dispute concerns Cost Oil, not Tax Oil, and so in no way impacts Nigeria's authority to impose taxes.

## B.   Nigeria Is Not an Adequate Forum

NNPC's FNC argument fails for the additional reason that NNPC has not shown that Nigeria is an adequate alternative forum.  *See DiRienzo*, 294 F.3d at 29 ("[FNC] motion cannot be granted absent an adequate alternative forum."); *Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*, 528 F. Supp. 1337, 1342-43 (S.D.N.Y. 1982) (denying FNC motion when plaintiff "raised serious questions about the independence of the Chilean judiciary"); *Sangeorzan v. Yangming Marine Transp. Corp.*, 951 F. Supp. 650, 654 (S.D. Tex. 1997) (denying FNC motion where court "has doubts about the ability of the government courts to fairly and justly decide claims against a government money-making enterprise").

NNPC may be "'amenable to service of process' in Nigeria, and Nigerian law 'permits litigation of the subject matter of the disputes,'" MTD at 6-7 (quoting *Figueiredo*, 665 F.3d at 390-91), but "where the remedy offered by the other forum is clearly unsatisfactory," the alternative forum may not be adequate.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981).  That is the case here: Petitioners are denied a fair day in court in Nigeria because the Nigerian courts effectively cannot enforce Petitioners' Awards in this high-profile, high-value dispute with NNPC.  *See* First Page Decl. ¶ 31; AP at ¶¶ 91-94; Second Page Decl. ¶¶ 37-38; *supra* at 4-6; *Canadian Overseas*, 528 F. Supp. at 1342-43.  Unlike in *BFI Grp. Divino Corp. v.*

*JSC Russian Aluminum*, Petitioners do not ask the Court to "presume judicial bias against the plaintiff when the defendant is a state-owned entity."  298 F. App'x 87, 91 (2d Cir. 2008).[16] Rather, Petitioners have shown that over the last twenty years the Nigerian courts have never ordered NNPC to pay damages to an IOC or enforced an arbitral award for damages against NNPC, *see* Vandergeest Decl. ¶¶ 4-10; Vandergeest Decl. Exs. A-C; First Page Decl. ¶ 53; Second Page Decl. ¶¶ 26-34; *see also Norex*, 416 F.3d at 160 ("foreclosed past claims or remote future ones" do not demonstrate alternative forum).  Nigeria is not an adequate alternative forum.

### C.   NNPC Fails to Weigh the Public and Private Interest Factors

Finally, NNPC fails to weigh the public and private interest factors, and so the FNC defense should be denied.  *See Edward B. Beharry & Co. v. Bedessee Imports Inc.*, 09-CV-77 (DLI) (JMA), 2013 WL 12363612, at *8 (E.D.N.Y. June 24, 2013) (rejecting FNC defense where defendants did not "address the private and public interest factors," but "argue that [the action] lacks a sufficient nexus to this forum because it 'pertains solely to events that occurred exclusively [outside of the forum] that are governed exclusively by [foreign] law'").

### CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court deny Respondent's Motion to Dismiss in its entirety, grant the relief requested in the Petition, and order such other relief as the Court may deem just and proper.

---

[16]   Cases finding Nigeria to be an adequate forum, MTD at 7, are inapposite as they concern disputes between private parties and do not implicate the concerns raised here.  *See UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, No. SA-04-CA-1008-WRF, 2008 WL 2946059, at *17 (W.D. Tex. July 25, 2008), *rev'd on other grounds*, 581 F.3d 210 (5th Cir. 2009) (denying FNC where there was "genuine concern over the autonomy" of Saudi courts and cases finding Saudi Arabia to be an adequate forum did not implicate those concerns).

Dated: New York, New York
       March 10, 2020

FRESHFIELDS BRUCKHAUS DERINGER US LLP

By:   */s/ Timothy P. Harkness*
      _____
      Timothy P. Harkness
      Elliot Friedman
      David Y. Livshiz
      Paige von Mehren
      Christian Vandergeest
      Nathan A. Hembree

601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
timothy.harkness@freshfields.com
elliot.friedman@freshfields.com
david.livshiz@freshfields.com
paige.vonmehren@freshfields.com
christian.vandergeest@freshfields.com
nate.hembree@freshfields.com

*Attorneys for Petitioners*